UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SEON CHOI,                                        :
                                                  :
                            Plaintiff,            :
                                                  :      No. 16-cv-5392 (WFK)(LB)
            -against-                             :
                                                  :      Service Date: October 12, 2018
LIBERTY MUTUAL INSURANCE COMPANY,                 :
JESSICA ROGIN, LULU AMENDOLA, and                 :
JAMES HINCHLEY,                                   :
                                                  :
                            Defendants.           :
                                                  :
-------------------------------------------------------------x

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR SUMMARY JUDGMENT MOTION**

Dated:  New York, New York
        October 12, 2018

Aaron Warshaw
Sharon P. Margello
Evan B. Citron
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
599 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 492-2500

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT .................................................................................. 1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................ 2

    A.  PLAINTIFF'S EMPLOYMENT WITH LM.......................................................... 2

    B.  PLAINTIFF'S AGE DISCRIMINATION CLAIMS
        ARE UNFOUNDED.......................................................................................... 3

    C.  LM ENGAGED IN THE INTERACTIVE PROCESS,
        DESPITE PLAINTIFF'S INITIAL AND SUSTAINED REFUSAL TO
        PARTICIPATE ................................................................................................ 5

    D.  PLAINTIFF RETURNED TO WORK WHEN SHE WAS FINALLY
        ABLE TO PERFORM HER DUTIES ON MORE THAN A
        PART-TIME BASIS ......................................................................................... 9

III.  ARGUMENT ...................................................................................................... 9

    A.  THE APPLICABLE SUMMARY JUDGMENT STANDARD ............................ 9

    B.  PLAINTIFF'S AGE DISCRIMINATION CLAIMS SHOULD
        BE DISMISSED ............................................................................................ 10

        1.  Plaintiff's ADEA Claim Fails .................................................. 11

        2.  Plaintiff Cannot Demonstrate That LM's Legitimate,
            Non-Discriminatory Reasons Were a Pretext for Intentional
            Discrimination.......................................................................... 13

        3.  Plaintiff's NYCHRL Age Discrimination Claim Fails ............. 14

    C.  PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM SHOULD BE
        DISMISSED BECAUSE LM PROVIDED SEVERAL ACCOMMODATIONS
        EVEN WHEN PLAINTIFF WAS UNABLE TO WORK AS A MANAGER
        FULL-TIME ................................................................................................ 15

        1.  Plaintiff Was Not a Qualified Individual With a Disability ..... 16

        2.  Unlike Plaintiff, LM Engaged in the Interactive Process ......... 17

        3.  Defendants Accommodated Plaintiff........................................ 19

    D.  PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED............. 21

        1.  Plaintiff Did Not Suffer Any Adverse Employment Action.................... 22

i

2.     Plaintiff Cannot Establish a Causal Connection Between Her
       Purported Protected Activity and Any Adverse Employment Action ...... 23

3.     Plaintiff's NYCHRL Retaliation Claim Must Also Be Dismissed ........... 24

E.     PLAINTIFF'S AIDING AND ABETTING CLAIMS SHOULD
       BE DISMISSED ................................................................................................ 24

IV.    CONCLUSION ............................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdu–Brisson v. Delta Air Lines*,
 239 F.3d 456 (2d Cir. 2001) ...................................................................10

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ...............................................................................10

*Andretta v. Napolitano*,
 922 F. Supp. 2d 411 (E.D.N.Y. Feb. 13, 2013) (Kuntz, J.) ............................ *passim*

*Baguer v. Spanish Broad. Sys.*,
 2010 U.S. Dist. LEXIS 69212 (S.D.N.Y. July 12, 2010) ...............................12

*Birkholz v. City of N.Y.*,
 2012 WL 580522 (E.D.N.Y. Feb. 22, 2012) ..............................................21, 24

*Brod v. Omya, Inc.*,
 653 F.3d 156 (2d Cir. 2011) ...................................................................10

*Burlington Northern & Santa Fe Railway Co. v. White*,
 548 U.S. 53 (2006) ...............................................................................22

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ...............................................................................10

*Craddock v. Little Flower Children & Family Servs. of N.Y.*,
 2016 WL 755631 (E.D.N.Y. Feb. 25, 2016) ..............................................20, 23

*DeFina v. Meenan Oil Co.*,
 924 F. Supp. 2d 423 (E.D.N.Y. 2013) .....................................................12

*Donofrio v. N. Y. Times*,
 2001 U.S. Dist. LEXIS 13788 (S.D.N.Y. Aug. 24, 2001) .............................19

*Feingold v. N.Y.*,
 366 F.3d 138 (2d Cir. 2004) ...................................................................25

*Forrest v. Jewish Guild for the Blind*,
 309 A.D.2d 546 (1st Dep't 2003) ...........................................................25

*Galabya v. N.Y. City Bd. of Educ.*,
 202 F.3d 636 (2d Cir. 2000) ...................................................................22

*Gorzynski v. JetBlue Airways Corp.*,
   596 F.3d 93 (2d Cir. 2010)....................................................................................11

*Gross v. FBL Fin. Services, Inc.*,
   557 U.S. 167 (2009)..............................................................................................14

*Holowecki v. Fed. Express Corp.*,
   382 F. App'x 42 (2d Cir. 2010) ............................................................................12

*Hunt-Watts v. Nassau Health Care Corp.*,
   43 F. Supp. 3d 119 (E.D.N.Y. 2014) ...................................................................19

*Leon v. Dep't of Educ.*,
   2017 WL 6729676 (E.D.N.Y. Sept. 29, 2017) (Kuntz, J.) ............................... *passim*

*Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*,
   263 F.3d 208 (2d Cir. 2001)..................................................................................10

*Mathews v. Huntington*,
   499 F. Supp. 2d 258 (E.D.N.Y. 2007) .................................................................13

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)........................................................................................11, 12

*Noll v. Int'l Bus. Machs. Corp.*,
   78 F.3d 89 (2d Cir. 2015)................................................................................16, 20

*Rodriguez v. City of N.Y.*,
   2011 WL 3610751 (E.D.N.Y. Aug. 16, 2011)......................................................14

*Romanello v. Shiseido Cosmetics Am. Ltd.*,
   2002 U.S. Dist. LEXIS 18538 (S.D.N.Y. Sept. 30, 2002), *aff'd*, 71 Fed. App'x
   880 (2d Cir. 2003)..........................................................................................16, 20

*Rosario v. Hilton Worldwide, Inc.*,
   2011 U.S. Dist. LEXIS 8719 (E.D.N.Y. Jan. 24, 2011) .......................................13

*Rozenfeld v. Dep't of Design & Const. of City of N.Y.*,
   875 F. Supp. 2d 189 (E.D.N.Y. July 12, 2012) (Kuntz, J.)...............................21, 24

*Ruhling v. Tribune Co.*,
   2007 U.S. Dist. LEXIS 116 (E.D.N.Y. Jan. 3, 2007) ...........................................20

*Sayed v. Hilton Hotels Corp.*,
   627 F.3d 931 (2d Cir. 2010)..................................................................................21

*Schwapp v. Town of Avon*,
   118 F.3d 106 (2d Cir. 1997)..................................................................................10

*Shannon v. N.Y. City Transit Auth.*,
   332 F.3d 95 (2d Cir. 2003)......................................................................................18

*Stevens v. Rite Aid Corp.*,
   851 F.3d 224 (2d Cir. 2017)....................................................................................18

*Suarez v. City of N.Y.*,
   2012 U.S. Dist. LEXIS 144918 (S.D.N.Y. Sept. 26, 2012)..............................21, 22

*Terry v. Ashcroft*,
   336 F.3d 128 (2d Cir. 2003)....................................................................................11

*Thompson v. Tom Vazquez Janitorial*,
   2006 U.S. Dist. LEXIS 85931 (E.D.N.Y. Nov. 28, 2006)......................................13

*Turowski v. Triarc Cos.*,
   761 F. Supp. 2d 107 (S.D.N.Y. 2011)....................................................................17

*Wernick v. Fed. Reserve Bank of N.Y.*,
   91 F.3d 379 (2d Cir. 1996)......................................................................................20

*Whitting v. Locust Valley Cent. Sch. Dist.*,
   2012 U.S. Dist. LEXIS 152233 (E.D.N.Y. Oct. 22, 2012)......................................13

*Williams v. N.Y. City Hous. Auth.*,
   872 N.Y.S.2d 27 (1st Dep't 2009) ..........................................................................24

*Witchard v. Montefiore Med. Ctr.*,
   103 A.D.3d 596 (1st Dep't 2013) ............................................................................24

**Statutes and Other Authorities**

29 C.F.R. § 1630.2(o)(1)(ii), (iii)........................................................................................16

42 U.S.C. § 12111(10)(A)..................................................................................................20

Age Discrimination in Employment Act .................................................................. *passim*

Americans with Disabilities Act ............................................................................... *passim*

Fed. R. Civ. P. 37(c) ..........................................................................................................18

Fed. R. Civ. P. 56(a) ............................................................................................................9

New York City Human Rights Law........................................................................... *passim*

## I.        PRELIMINARY STATEMENT

Defendants Liberty Mutual Insurance Company ("LM"),[1] Jessica Rogin ("Rogin"), Lulu Amendola ("Amendola"), and James Hinchley ("Hinchley") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for summary judgment. Plaintiff's allegations of discrimination based on her age (born July 21, 1967) and disability (stroke), and retaliation, under the Age Discrimination in Employment Act ("ADEA"), Americans with Disabilities Act ("ADA"), and the New York City Human Rights Law ("NYCHRL") fail because she has no reasonable expectation of proving essential elements of her claims.

Plaintiff's age discrimination claims are without merit as she alleges that LM failed to promote her to (i) a position to which she *never* applied, and that was at her same level without an increase in salary, and (ii) a position that was filled with someone she believes is only five years younger than her, whose qualifications were objectively superior to her own. Plaintiff's feeble effort to bolster her age claim fails because she merely points to a single PowerPoint slide (from a presentation Plaintiff did not attend) that referenced her department's years of experience, not age.

Plaintiff's disability discrimination claims fare no better, because LM accommodated her alleged disability by granting her an extended leave of absence of almost *two years* (from August 7, 2015 until July 31, 2017). During this period, LM properly concluded, based on Plaintiff's doctors' opinions, that she could neither manage the full-time employees who she supervised, nor assume responsibility for her group's work in processing complex insurance claims. LM drew this conclusion from Plaintiff's numerous doctor's notes and questionnaires, which demonstrated that she was unable to perform the essential functions of her full-time, management position. Indeed, Plaintiff certified to LM's insurance carrier that she was "*totally disabled*," *i.e.*, "*unable to perform*

---

[1]        By Order dated June 18, 2018, the Court amended the caption to add Liberty Mutual Insurance Company and remove Liberty Mutual Insurance and Liberty International Insurance Underwriters as the proper Defendant. (Dkt. 51.)

*all the material and substantial duties of [her] job*." LM nonetheless treated Plaintiff favorably by: (i) permitting her to remain on an extended leave while she collected disability benefits; (ii) repeatedly proposing an accommodation of alternate positions at LM; and (iii) providing her with a modified schedule once she was able to work more than part-time and assume her job duties. Further, Plaintiff failed to engage in the interactive process because she refused for *over a year* to complete an authorization for LM to obtain more information from her doctors to evaluate her accommodation request, and she refused to consider alternate positions offered to her. Moreover, Plaintiff's request to work only two or three days per week with less responsibility would have required LM to eliminate her essential job functions and force other managers to assume her duties. Plaintiff remained on leave until she could perform the essential functions of her position, albeit at a modified schedule. In fact, when Plaintiff returned to work, she received a salary increase.

Plaintiff's retaliation claim is similarly without merit because she voluntarily resigned and did not suffer an adverse employment action, let alone can she show any causal connection between any protected activity and such an employment action. Plaintiff also cannot maintain her aiding and abetting claims because her underlying claims against LM fail, and she has not proved that any individual Defendant engaged in, or condoned, any discriminatory or retaliatory act against her. Therefore, as discussed herein, Plaintiff's claims should be dismissed.

## II.      STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

### A.      PLAINTIFF'S EMPLOYMENT WITH LM

In 2015, Plaintiff held a demanding, full-time position as Claims Manager II, handling complex director and officer ("D&O") claims in LM's Management Liability Claims department. (56.1, ¶ 1.) She worked more than 40 hours per week. (*Id.*, ¶ 2.) Plaintiff had seven direct reports,

---

[2]      The undisputed facts cited herein are contained in Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("56.1"). As required under the summary judgment standard, Defendants assume that Plaintiff's plausible facts are true for purposes of this motion <u>only</u>.

each of whom managed approximately 300 claims. (*Id.*, ¶ 3.) Plaintiff helped supervise two employees who reported to her manager, REDACTED ("REDACTED"). (*Id.*, ¶ 4.) She also directly managed 100 or so claims, which included difficult claims involving multi-million dollar securities class actions and coverage lawsuits against LM. (*Id.*, ¶ 5.)  In addition to REDACTED, Plaintiff was one of two managers in her department. (*Id.*, ¶ 6.) Plaintiff "co-managed" her department's staff with REDACTED, who was often managing another department or traveling. (*Id.*, ¶ 7.) Plaintiff managed the highest volume of claims of any LM department head. (*Id.*, ¶ 8.)

**B.    PLAINTIFF'S AGE DISCRIMINATION CLAIMS ARE UNFOUNDED**

Plaintiff was born on REDACTED 1967. (*Id.*, ¶ 9.) Her age discrimination claims are based upon being passed over for promotions by Rogin (born in REDACTED 1966) and Hinchley (born in REDACTED 1971) – both of whom are approximately the same age as Plaintiff. (*Id.*, ¶¶ 10-11.)

Plaintiff alleges that, in 2015, she was not "promoted" to a position that was filled by Jessica So ("So"), who is younger than her. While it is true that, in 2015, Hinchley hired So for Director of Special Projects, Plaintiff never applied for that position and, in fact, the position was (at best) a lateral move that paid less. (*Id.*, ¶¶ 12-13.) Specifically, So's position was at the same grade as Plaintiff's position but, when So assumed that position in mid-August 2015, her salary was $REDACTED – compared to Plaintiff's salary of $REDACTED (*Id.*, ¶ 14.) Moreover, the position was created to assist with the overall strategy of Liberty International Underwriters ("LIU"), a division of LM, and So had prior exposure to different aspects of LIU. (*Id.*, ¶ 15.) By contrast, Plaintiff's claims experience was *not* a qualification for the role, and Hinchley did not even know So's age. (*Id.*, ¶¶ 16-17.)

Plaintiff similarly makes the unfounded claim that she was passed over for promotion to another position when the individual who received the promotion had objectively superior qualifications and, in any event, was not significantly younger than Plaintiff. In early summer

2015, REDACTED recommended to Rogin that Plaintiff be promoted to Vice President of the Errors & Omissions ("E&O") department. (*Id.*, ¶ 18.) Rogin instead elected to promote Vivian Freedman ("Freedman"), who by Plaintiff's estimation is only approximately five years younger than her. (*Id.*, ¶ 19.) Rogin, who is *older* than Plaintiff, had no knowledge of Plaintiff's age. (*Id.*, ¶ 20.) Rogin chose to promote Freedman to the E&O position because Freedman had directly reported to Rogin, and Rogin believed that Freedman was a high performer (in fact, Freedman was rated a 13 from 2015 to 2017 whereas Plaintiff was rated an 11 for 2014, 2015 and 2017); and Rogin preferred a manager who was less associated with REDACTED, with whom Plaintiff was closely aligned and whose leadership Rogan questioned after he received a One Time Final Warning ("OTFW"). (*Id.*, ¶ 21.)

Plaintiff's attempt to bolster her age claim by pointing to an irrelevant PowerPoint presentation is without merit. In June 2015, Hinchley became Regional President. (*Id.*, ¶ 22.) Hinchley received a presentation to introduce him to the claims team. (*Id.*, ¶ 23.) As part of the presentation, Rogin asked REDACTED to compile claims handlers' levels of experience. (*Id.*, ¶ 24.) Plaintiff and others assisted REDACTED to gather this information. (*Id.*, ¶ 25.) Based on that information, one slide in the presentation to Hinchley described the overall experience levels of the claims department – but the slide and information that Plaintiff helped collect did not identify any employee's age, let alone Plaintiff's age. (*Id.*, ¶ 26.) Plaintiff did not attend the meeting and she has no direct knowledge of the presentation. (*Id.*, ¶ 27.) REDACTED, who unlike Plaintiff attended the meeting, did not perceive that the slide as discriminatory to older workers, but rather he understood it had been created to demonstrate the claims handlers' depth of experience. (*Id.*, ¶ 28.)

Notably, Hinchley never referred to "younger" or "older" employees during the presentation. (*Id.*, ¶ 29.) Rather, Hinchley allegedly stated, "*What's wrong with this chart that so many people are in this higher category of years-of-experience group?*" (*Id.*, ¶ 30.) Even Plaintiff

4

(as well as <sup>REDACTED</sup> agrees that the chart was not based on age because it is clearly possible for an "older" worker to have less work experience. (*Id.*, ¶ 31.)

In the end, Rogin is older than Plaintiff, Hinchley and Rogin filled the positions at issue with people whose qualifications were objectively superior to those of Plaintiff, and Plaintiff never even applied to the Special Projects role.  (*Id.*, ¶ 32.)

## C.    LM ENGAGED IN THE INTERACTIVE PROCESS, DESPITE PLAINTIFF'S INITIAL AND SUSTAINED REFUSAL TO PARTICIPATE

On August 5, 2015, Plaintiff suffered a hemorrhagic stroke. (*Id.*, ¶ 33.) Plaintiff was hospitalized for five weeks and, once released, she received care from visiting nurses for up to a month. (*Id.*, ¶ 34.) Through at least the end of 2015, Plaintiff received outpatient rehabilitation three to four times a week. (*Id.*, ¶ 35.) LM, through its insurance carrier, provides eligible employees such as Plaintiff with short-term disability ("STD") and long-term-disability ("LTD") benefits. (*Id.*, ¶ 36.) Following her stroke, Plaintiff received six months of STD benefits, after which she received LTD benefits. (*Id.*, ¶ 37.) To obtain LTD benefits, Plaintiff certified to LM's insurance carrier that she was "*totally disabled*," *i.e.*, "*unable to perform all the material and substantial duties of [her] job.*" (*Id.*, ¶ 38.)

In addition, LM granted Plaintiff an extended leave of absence. (*Id.*, ¶ 39.) The decision-maker at LM regarding whether to grant a medical accommodation request depends upon the circumstances of the request. (*Id.*, ¶ 40.) In this case, LM's Employee Relations ("ER") department was the decision-maker whether to grant Plaintiff's accommodations, and ER Consultant Gabriel Williams ("Williams") handled Plaintiff's request. (*Id.*, ¶ 41.) Plaintiff's supervisors did not make this decision, and LM did not fill Plaintiff's position while she was on a leave of absence. (*Id.*, ¶ 42.)

On February 4, 2016, Plaintiff submitted a doctor's[3] note to Human Resources ("HR"), which indicated she could return to work in mid-March 2016 in a "*gradual fashion*." (*Id.*, ¶ 43.) Plaintiff's doctor recommended that Plaintiff work two days per week and "*slowly*" increase to three days per week with medical monitoring. (*Id.*, *¶ 44*). Plaintiff's doctor also stated that Plaintiff should return to work with a "*lower level of responsibility*." (*Id.*, ¶ 45.) In order to assign Plaintiff less responsibility, LM would have been required to assign Plaintiff's job duties to another employee. (*Id.*, ¶ 46.) Not only had Plaintiff's own doctors recommended lower levels of responsibilities, they indicated her ability to work was limited, at most. On or about February 6, 2016, Plaintiff submitted a medical questionnaire to LM's insurance carrier, which indicated she was prevented from engaging in gainful employment due to "*neural fatigue from stroke and [was] still in recovery*." (*Id.*, ¶ 47.)

After HR received Plaintiff's request to work part time with less responsibility, they sought guidance from Williams in ER. (*Id.*, ¶ 48.) Williams evaluated Plaintiff's request and determined that full-time management was an essential function of her position. (*Id.*, ¶ 49.) Williams also recommended that Plaintiff execute a healthcare authorization form so that LM could obtain more information to determine what accommodations might be possible. (*Id.*, ¶ 50.) On February 22, 2016, HR requested Plaintiff complete the authorization. (*Id.*, ¶ 51.) However, *for over a year*, Plaintiff refused to provide the requisite authorization that would have allowed LM to assess whether an accommodation existed which would allow Plaintiff to perform the essential functions of her position. (*Id.*, ¶ 52.) Eventually, LM was able to resolve the issue by accepting follow-up questionnaires that Plaintiff gave to her doctors to complete, which were in lieu of a review of medical records that could be obtained through authorizations. (*Id.*, ¶ 53.)

---

[3]     For simplicity's sake, the term "doctor" includes any and all of Plaintiff's health care providers, medical providers, or physicians.

During the same period, Plaintiff submitted numerous doctor's notes that demonstrated Plaintiff could not perform the essential functions of her position, with or without an accommodation. For example, on March 24, 2016, Plaintiff's doctor advised that she would require "*fewer responsibilities*," "*reduced workflow*," and "*greater time to complete tasks*" upon any return to work. (*Id.*, ¶ 54.) Her doctor further advised that Plaintiff was "*unable*" to "*tolerate highly stimulating environments*," and that her condition would persist for six to 12 months. (*Id.*, ¶ 55.) On June 7, 2016, Plaintiff's doctor advised that she "*needed to continue to receive three times weekly cognitive remediation*," and that "*it is not advisable for her to work full-time*." (*Id.*, ¶ 56.) On October 28, 2016, her doctor confirmed Plaintiff could only return to work on a reduced schedule of three days per week and assume a "*lower level [of] responsibility than previously*." (*Id.*, ¶ 57.)

During this time period – despite Plaintiff's continued refusal to provide the requested medical record authorizations – LM continued to communicate with Plaintiff in an effort to determine whether Plaintiff was qualified to perform her essential job duties and whether they could provide her with a reasonable accommodation. (*Id.*, ¶ 58.)  On November 23, 2016, Williams wrote to Plaintiff regarding her June 7 and October 28, 2016 doctors' notes, stating he was again seeking an authorization but that, if Plaintiff preferred, he offered her with a list of follow-up questions that she could forward to her appropriate doctor. (*Id.*, ¶ 59.) Nevertheless, on December 1, 2016, Plaintiff again refused to provide an authorization, stating that (despite the evidence to the contrary) the medical information she had provided to date was adequate for LM's assessment. (*Id.*, ¶ 60.) On December 19, 2016, Plaintiff wrote to Williams to yet again express her belief that the previously provided information was adequate, but that she nonetheless had sent his questions to her doctor. (*Id.*, ¶ 61.)

7

On January 10, 2017, Plaintiff's doctor finally completed the questionnaire. (*Id.*, ¶ 62.) Confusingly, while her doctor indicated that none of Plaintiff's impairments substantially limited a major life activity, the doctor also opined that her Plaintiff's impairments prevented her from performing her job function because he limited her hours of work. (*Id.*, ¶ 63.) Plaintiff's doctor wrote that Plaintiff should limit her hours of work to three days per week and then transition to *full-time* over a period of up to four months. (*Id.*, ¶ 64.)

On February 24, 2017, Williams wrote to Plaintiff, informing her that her doctor indicated that she does not suffer from an impairment to a major life activity that qualifies as a disability. (*Id.*, ¶ 65.) Nonetheless, Williams wrote that LM would offer her a modified work schedule of four days per week, working from home one day per week. (*Id.*, ¶ 66.) Although Plaintiff considered this letter as part of the interactive process, she did not respond. (*Id.*, ¶ 67.)

On April 14, 2017, having not heard back from Plaintiff, Williams followed up with Plaintiff to reiterate that LM was open to discussing a possible modified work schedule, or other possible options to allow her to return to work. (*Id.*, ¶ 68.) On April 17, 2017, Plaintiff responded to Williams she was only willing to discuss her return to work in the context of a mediation session scheduled in May 2017 regarding this litigation. (*Id.*, ¶ 69.) LM (including through counsel) also offered Plaintiff the unconditional offer of placing her in a comparable position in or around Los Angeles and New York – two cities Plaintiff had identified as her preferences – without having to apply, interview, or compete. (*Id.*, ¶ 70.) Plaintiff rejected *all* such offers without explanation. (*Id.*, ¶ 71.)

On April 19, 2017, Williams again followed up with Plaintiff, reiterating that she had not responded to LM's inquiry regarding her return to work plans, and that she needed to respond to avoid placing her potential return in jeopardy. (*Id.*, ¶ 72.) Plaintiff did not respond to Williams; instead, she simply sought to amend her Complaint to add retaliation claims. (*Id.*, ¶ 73.)

On May 30, 2017,[4] Plaintiff finally responded to Williams and expressed interest in discussing the modified schedule that Williams had proposed. (*Id.*, ¶ 75.) On June 23, 2017, Plaintiff submitted a doctor's letter that certified Plaintiff would be able to return to work four days per week beginning on July 31, 2017. (*Id.*, ¶ 76.) On June 23, 2017, Williams responded to Plaintiff's doctor's letter by providing a questionnaire so that LM could better understand what accommodations, if any, Plaintiff's doctor was recommending. (*Id.*, ¶ 77.) In the alternative, Williams again offered alternative positions with LM for Plaintiff to consider. (*Id.*, ¶ 78.)

On June 26, 2017, Plaintiff responded that she was seeking to return to work four days per week in the job she held prior to her medical leave. (*Id.*, ¶ 79.) On June 27 and 28, 2017, Plaintiff and Williams continued to discuss Plaintiff's return to work. (*Id.*, ¶ 80.) At that time, Williams approved Plaintiff's request to return with a modified schedule. (*Id.*, ¶ 81.)

## D. PLAINTIFF RETURNED TO WORK WHEN SHE WAS FINALLY ABLE TO PERFORM HER DUTIES ON MORE THAN A PART-TIME BASIS

Plaintiff returned to work on July 31, 2017, on the very date she proposed herself, as a full-time employee with a modified schedule. Plaintiff returned to her position, with an increase in pay from prior to her leave. (*Id.*, ¶ 84.) When she returned, she no longer reported to REDACTED because he had voluntarily resigned from LM in August 2016. (*Id.*, ¶ 85.)

## III.  ARGUMENT

## A.  THE APPLICABLE SUMMARY JUDGMENT STANDARD

"A court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Andretta v. Napolitano*, 922 F. Supp. 2d 411, 417 (E.D.N.Y. Feb. 13, 2013) (Kuntz, J.) (quoting Fed. R. Civ. P. 56(a)). "'The role of the court is not to resolve disputed issues of fact but to assess whether

---

[4]     In this same month, May 2017, LM underwent a significant reorganization when it acquired Ironshore, Inc. (*Id.*, ¶ 74.)

9

there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Id.* (quoting *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011)). "No genuine issue of material fact exists 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (quoting *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir. 2001)).

"If the moving party satisfies this burden, the non-moving party must 'make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "Importantly, if the evidence produced by the non-moving party 'is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).

"It is 'beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'" *Id.* (quoting *Abdu–Brisson v. Delta Air Lines*, 239 F.3d 456, 466 (2d Cir. 2001)). "Therefore, 'even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment.'" *Id.* (quoting *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997)). Under this standard, the Court should grant summary judgment in Defendants' favor.

**B.      PLAINTIFF'S AGE DISCRIMINATION CLAIMS SHOULD BE DISMISSED**

Plaintiff's age claims fail because she has not produced and cannot produce evidence of discriminatory animus based on Plaintiff's age. Plaintiff cannot prove that LM "failed" to promote her to the Special Projects position due to her age because (i) she did not suffer an adverse employment action, having never applied for that position, (ii) Hinchey did not know So's age,

10

and (iii) So had knowledge of LIU's various departments, whereas Plaintiff's claims experience was not a qualification for the role. Moreover, Plaintiff cannot establish that age was a determinative factor in LM's rejection of her application for the E&O position because (i) her qualifications were not objectively superior to Freedman's, (ii) Rogin preferred a manager who was less associated with <sup>REDACTED</sup>, with whom Plaintiff was closely aligned and whose leadership Rogan questioned after he received an OTFW, (iii) Plaintiff never worked closely with Rogin, whereas Rogin had prior experience with Freedman, (iv) Rogin is older than Plaintiff, and (v) Freedman was not substantially younger than Plaintiff. Accordingly, the Court should dismiss Plaintiff's ADEA and NYCHRL age discrimination claims.

### 1.    Plaintiff's ADEA Claim Fails

"In evaluating discrimination claims brought under the ADEA, courts in the Second Circuit apply the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Andretta*, 922 F. Supp. 2d at 417 (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010)). "Under *McDonnell,* the Plaintiff bears the initial burden of proving a *prima facie* case of discrimination by a preponderance of the evidence. *Id.* (citing *McDonnell Douglas,* 411 U.S. at 802). "To establish a *prima facie* case under the ADEA, the Plaintiff has to show (1) [s]he was a member of the protected class; (2) [s]he was qualified for the position at issue; (3) an adverse employment action was taken against [her]; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 418 (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003)). "If the plaintiff establishes a *prima facie* case, the defendant may rebut the presumption of discrimination by coming forward with evidence supporting a legitimate, nondiscriminatory basis for its actions." *Id.* (citing *McDonnell*, 411 U.S. at 802). "If the defendant meets this burden, the plaintiff must then show by a preponderance of the evidence that the reasons proffered by the defendant were merely pretext for discrimination."

*Id.* (citing *McDonnell*, 411 U.S. at 804). "In order to satisfy this final burden in the *McDonnell* framework, the plaintiff 'must offer evidence that age discrimination was the "*but-for*" cause of the challenged actions' and not merely a contributing or motivating factor." *Id.* (quoting *Holowecki v. Fed. Express Corp.*, 382 F. App'x 42, 45 (2d Cir. 2010)).

Here, Plaintiff cannot establish a *prima facie* case because the only element she can establish is that she was within the protected class. Plaintiff readily admits that she *never* applied to the Special Projects position, and therefore she did not suffer any adverse employment action. Moreover, Hinchley filled the position with So, who had broad exposure to LIU, whereas Plaintiff's claims background was not a qualification for the position. Further, Hinchley had no knowledge of So's age, and Plaintiff and Hinchley never communicated about the position.

Plaintiff likewise cannot establish a *prima facie* case based on Rogin's decision to promote Freedman to the E&O position. Rogin promoted Freedman because her qualifications were observably superior to those of Plaintiff, as confirmed by their performance ratings. Moreover, Rogin reasonably believed Freedman was more qualified than Plaintiff because Plaintiff never worked closely with Rogin, while Freedman worked under Rogin's supervision, and thus Rogin had ample reason to believe Freedman would succeed in this role. Rogin also preferred a manager who was less associated with [REDACTED]. In addition, Plaintiff believes she was merely five years younger than her, which further refutes any inference of age discrimination. *Baguer v. Spanish Broad. Sys.*, 2010 U.S. Dist. LEXIS 69212, at *41, 44-45 (S.D.N.Y. July 12, 2010) (eight-year age difference between Plaintiff and his replacement insufficient to support an inference of discrimination or establish pretext).

Plaintiff's age discrimination claims are also belied by the fact that Rogin is older than Plaintiff, and Hinchley was close in age and over 40 years old. *DeFina v. Meenan Oil Co.,* 924 F. Supp. 2d 423, 425 (E.D.N.Y. 2013) (age discrimination unlikely where decision-makers were both

over 40 and very close in age to plaintiff); *Whitting v. Locust Valley Cent. Sch. Dist.*, 2012 U.S. Dist. LEXIS 152233, at *33 (E.D.N.Y. Oct. 22, 2012) (age discrimination unlikely where the decision makers responsible for the challenged action are over 40 years old); *Mathews v. Huntington,* 499 F. Supp. 2d 258, 267 (E.D.N.Y. 2007) (fact that decision makers were older than 40 undermines any inference of age discrimination).

Plaintiff's reliance on the slide presentation to suggest an inference of discrimination is likewise unavailing. That presentation merely identified the claims department's overall years of experience, not any specific age of any employee, let alone Plaintiff's age. As Plaintiff (and REDACTED) admit, it is possible for older workers to be less experienced, and the chart itself was age neutral. The absence of any evidence of age-based comments also weighs heavily against any inference of discrimination. *Rosario v. Hilton Worldwide, Inc.*, 2011 U.S. Dist. LEXIS 8719, at *11-14 (E.D.N.Y. Jan. 24, 2011) (absence of discriminatory comments contributed to plaintiff's failure to state *prima facie* case of age discrimination). In the end, Plaintiff provides nothing more than pure speculation to support her age discrimination claim, which is wholly insufficient. *Thompson v. Tom Vazquez Janitorial*, 2006 U.S. Dist. LEXIS 85931, at *8 (E.D.N.Y. Nov. 28, 2006) ("unsupported speculation that because [plaintiff] was within the protected age group and other workers were younger, he must have [suffered an adverse action] for discriminatory reasons" insufficient to establish *prima facie* ADEA case). Plaintiff's age claim therefore fails.

### 2.   Plaintiff Cannot Demonstrate That LM's Legitimate, Non-Discriminatory Reasons Were a Pretext for Intentional Discrimination

Assuming *arguendo* that Plaintiff can establish a *prima facie* case of age discrimination (which she cannot), LM easily establishes its burden of production because So and Freedman's qualifications were superior to those of Plaintiff's – and, with regard to So, LM had no reason to make that comparison as Plaintiff did not apply to the Special Projects role. To satisfy her ultimate burden of proving that these decisions were pretext for age discrimination, Plaintiff must establish

that age discrimination was the "*but-for*" cause of the challenged actions, rather than just "a motivating factor" of the challenged action. *Gross v. FBL Fin. Services, Inc.,* 557 U.S. 167 (2009). Plaintiff fails to carry her burden for the same reasons that she cannot establish a *prima facie* case of discrimination. *Supra* §III.B.1. As shown, Hinchley filled the Special Projects position with So, whose age Hinchley did not know, because her qualifications were superior to Plaintiff, who never even applied for or even expressed interest in the position. Similarly, Rogin filled the E&O position with Freedman because Rogin had prior experience with Freedman, whose qualifications were observably superior to those of Plaintiff. As such, Plaintiff has no reasonable expectation of establishing that LM's business reasons for these decisions were pretext for intentional discrimination, and her ADEA claim cannot survive for this additional reason.

### 3.   Plaintiff's NYCHRL Age Discrimination Claim Fails

Plaintiff's age discrimination claim under the NYCHRL is equally defective. Although similar to its federal counterpart, a plaintiff alleging an age discrimination claim under the NYCHRL may "satisfy the 'mixed-motive' standard, whereby the plaintiff show[s] that the age was 'a motivating factor'" in the adverse action alleged. *Leon v. Dep't of Educ.*, 2017 WL 6729676, at *7 (E.D.N.Y. Sept. 29, 2017) (Kuntz, J.) (NYCHRL "applies a less rigorous standard [than the ADEA], but still requires some evidence that Defendants were motivated by discrimination"). As shown above, Plaintiff offers no evidence that Defendants' reasons for the challenged decisions were motivated in any part by discrimination. *Rodriguez v. City of N.Y.*, 2011 WL 3610751, at *12 (E.D.N.Y. Aug. 16, 2011) (dismissing age discrimination claims under NYCHRL's "less burdensome standard" where evidence established that age was not motivating factor in the challenged decision). Accordingly, Plaintiff's NYCHRL age claim should be dismissed for the same reasons her ADEA claims fail – namely, there is no evidence whatsoever

that Plaintiff's age was a motivating factor in LM's decision to promote So or to promote Freedman.

## C.   PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM SHOULD BE DISMISSED BECAUSE LM PROVIDED SEVERAL ACCOMMODATIONS EVEN WHEN PLAINTIFF WAS UNABLE TO WORK AS A MANGER FULL-TIME

Plaintiff's failure to accommodate claim is equally meritless. Even though Plaintiff was largely unwilling to engage in the interactive process, the doctor's notes and questionnaires she did submit demonstrated that she was unable to perform the essential functions of her full-time, highly demanding management position during the relevant period. LM nonetheless gave Plaintiff ample reasonable accommodations by: (i) granting her an extended leave of absence for almost two years during which Plaintiff collected disability benefits; (ii) proposing on several occasions the accommodation of alternative positions at LM (which she outright rejected); and (iii) providing her with a modified schedule when she was finally able to assume her duties in the same job at a higher pay. By contrast, Plaintiff failed to engage in the interactive process. For more than a year, she refused to complete an authorization to allow LM to obtain information from her doctors to evaluate her accommodation request. Plaintiff's failure to accommodate claims must therefore be dismissed because: (i) she was not a qualified individual with a disability during the relevant period; (ii) even if she were eligible, Defendants engaged in the interactive process, while Plaintiff did not; and (iii) Defendants accommodated Plaintiff by allowing her an extended leave while collecting benefits, offering her alternative positions with LM, and permitting her to return to work with a modified schedule once she was able to perform her fulltime, management job duties.

"To prevail on a failure-to-accommodate claim, a plaintiff must show that: '(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such

accommodations.'" *Leon*, 2017 WL 6729676, at *5 (quoting *Noll v. Int'l Bus. Machs. Corp.*, 78 F.3d 89, 94 (2d Cir. 2015). "Where an 'employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'" *Id.* (quoting *Noll*, 787 F.3d at 94). "An accommodation is reasonable if it 'enable[s] an individual with a disability who is qualified to perform the essential functions of that position. . . [or] to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.'" *Id.* (quoting 29 C.F.R. § 1630.2(o)(1)(ii), (iii)). "Nevertheless, 'employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee.'" *Id.* (quoting *Noll*, 787 F.3d at 95).[5] Under this standard, Plaintiff's failure to accommodate claim must be dismissed.

### 1. <u>Plaintiff Was Not a Qualified Individual With a Disability</u>

Plaintiff was not a qualified individual with a disability during the relevant period because she was unable to perform the essential functions of her demanding full-time, management position. Most notably, Plaintiff was unable to manage the seven full-time employees whom she supervised, and unable to assume full responsibility for her group's work in processing complex and high-stakes claims. Indeed, during her leave, Plaintiff sought and obtained LTD benefits because she certified to the LM's insurance carrier that she was "*totally disabled*", i.e., "*unable to perform all the material and substantial duties of [her] job.*" Plaintiff's doctors consistently confirmed her certification that she was "*totally disabled*" – i.e., unable to perform her full-time job duties – throughout the relevant period:

- On March 24, 2016, Plaintiff's doctor noted that Plaintiff would require "*fewer responsibilities*," "*reduced workflow*," and "*greater time to complete tasks*" upon any

---

[5]     The same standard applies to Plaintiff's claims under the NYCHRL. *Romanello v. Shiseido Cosmetics Am. Ltd.*, 2002 U.S. Dist. LEXIS 18538, at *24 (S.D.N.Y. Sept. 30, 2002) ("the same standards used to evaluate claims under the ADA also apply to cases involving the . . . NYCHRL"), *aff'd*, 71 F. App'x 880 (2d Cir. 2003).

return to work. Plaintiff's doctor further advised that Plaintiff was "*unable*" to "*tolerate highly stimulating environments*," and her condition would persist for six to 12 months. (56.1, ¶¶ 54-55.)

- On June 7, 2016, Plaintiff's doctor advised that Plaintiff "*needed to continue to receive three times weekly cognitive remediation*," and that "*it is not advisable for her to work full-time*." (56.1, ¶ 56.)

- On October 28, 2016, Plaintiff's doctor requested that Plaintiff: (i) return to work on a reduced schedule of three days per week, and (ii) assume "*lower level [of] responsibility than previously*." (56.1, ¶ 57.)

- On January 10, 2017, Plaintiff's doctor affirmed that Plaintiff could not work more than three days per week and could not work full-time until mid-May 2017. (56.1, ¶ 64.)

Plaintiff's indisputable, documented inability to perform the essential functions of her position with (or without) a reasonable accommodation during the relevant period forecloses her failure to accommodate claim as a matter of law. *Turowski v. Triarc Cos.*, 761 F. Supp. 2d 107, 112 (S.D.N.Y. 2011) ("If a plaintiff cannot meet his burden of proving that he can perform the essential functions of his position with or without reasonable accommodations, he will be unable to establish a *prima facie* case of unlawful discrimination under the ADA."). Plaintiff cannot meet her burden.

## 2.   Unlike Plaintiff, LM Engaged in the Interactive Process

Plaintiff's disability discrimination claim also fails because she did not fulfill her obligation to engage in the interactive process. The record makes plain that, while LM fulfilled its duty to engage in the interactive process, Plaintiff did not. As this Court held in an analogous case:

> Finally, there is no support for Plaintiff's claim that Defendants refused to enter into an interactive process of negotiation with her. . . . To the contrary, there is no dispute that Defendants engaged in numerous discussions with Plaintiff about where and what Plaintiff would teach and offered Plaintiff multiple options that would have addressed concerns Plaintiff raised during those conversations. And after offering Plaintiff these various accommodations, there certainly was no need for Defendants to make further efforts beyond those conversations because the point of engaging in an interactive process is to discover a means by which an employee's disability could have been accommodated. Where, as here, the end the process is designed to serve had already been achieved, no additional process is required.

*Leon*, 2017 WL 6729676, at *6 (citations omitted).

Plaintiff's assertion that she never received a response to her request for an accommodation to return to work is demonstrably false.[6] ER – not Rogin, HR, or ᴿᴱᴰᴬᶜᵀᴱᴰ – was the decision-maker regarding Plaintiff's accommodation request, and there is no dispute that Williams from ER engaged with Plaintiff in addressing her request. Further, the record shows that LM repeatedly offered Plaintiff alternate positions internally, which she rejected. While LM fulfilled its duty to engage in the interactive process, Plaintiff failed to do so, which is fatal to her failure to accommodate claim.

First, Plaintiff refused to provide an authorization necessary to relay pertinent medical information to LM. That information was not only appropriately requested by LM, but also essential to a thorough interactive process. Plaintiff's complaint that it was inappropriate for LM to question her "cognitive abilities" is similarly unavailing because the documentation provided by Plaintiff's own doctors raised legitimate questions about her ability to perform her demanding job duties in any capacity, let alone a full-time one.

Second, Plaintiff requested multiple accommodations that were fundamentally incompatible with her job duties and thus unreasonable as a matter of law. Her request to work with less responsibility, for example, would have required LM to eliminate essential functions of her position, including her responsibility to handle complex claims and manage a full-time staff. *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 230 (2d Cir. 2017) ("A reasonable accommodation can never involve the elimination of an essential function of a job.") (citing *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003)). As ᴿᴱᴰᴬᶜᵀᴱᴰ testified, the only way to provide Plaintiff with the accommodation she desired was to shift her duties to another manager, which is

---

[6]      In fact, the Court can determine *sua sponte* whether sanctions are appropriate given this false representation and the falsity regarding So's position. *See* Fed. R. Civ. P. 37(c).

an unreasonable accommodation. *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 134 (E.D.N.Y. 2014) ("Plaintiff's proposed accommodation is [unreasonable] because it amounts to having other employees do her job for her.").

Third, the evidence shows that LM engaged in myriad efforts to facilitate Plaintiff's return to work, which likewise doom her claims. In particular, following Plaintiff's initial request to work two days per week with lesser responsibilities, Plaintiff relayed several further requests in 2016 from different doctors, each of whom made different recommendations and differing information. Each time Plaintiff's doctors responded to one of LM's requests for medical information, the doctors provided new or different information that spun the process in a new or different direction. The copious exchanges between Williams and Plaintiff plainly illustrate LM's consistent engagement in the interactive process, and LM's many efforts to facilitate Plaintiff's return to work. Indeed, far from failing to engage in the interactive process, LM's conduct in response to Plaintiff's requests exemplifies the interactive process that the ADA and the NYCHRL envisage. Plaintiff's failure to engage in the interactive process in good faith, in contrast, dooms her failure to accommodate claims. *Donofrio v. N.Y. Times*, 2001 U.S. Dist. LEXIS 13788, at *18 (S.D.N.Y. Aug. 24, 2001) ("Liability for failure to provide reasonable accommodations ensues only where the employer bears the responsibility for the breakdown in the interactive process. But where, as here, the employer does not obstruct the process, but instead makes reasonable efforts both to communicate with the employee and provide accommodations based on the information it possesses, ADA liability simply does not follow."). Plaintiff's claims fail for each of these reasons.

### 3.    Defendants Accommodated Plaintiff

Assuming *arguendo* that Plaintiff was a qualified individual with a disability, which she was not, her failure to accommodate claims must be dismissed because LM provided her with ample reasonable accommodations. *Leon,* 2017 WL 6729676, at *6 (dismissing plaintiff's failure

to accommodate claim where defendant accommodated plaintiff's disability, including because "employers are not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee") (quoting *Noll*, 787 F.3d at 95); *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996) ("easily" affirming summary judgment where employer offered reasonable accommodation). LM permitted Plaintiff to remain on an extended leave while collecting LTD benefits when she certified she was "*totally disabled*.") LM also permitted Plaintiff to return to work with a modified schedule when she was finally able to more responsibility on more than a part-time basis, and in fact paid her a higher salary than before her leave.

In short, Plaintiff cannot establish liability simply because she preferred a different accommodation. *Romanello*, 2002 U.S. Dist. LEXIS 18538, at *27 (employers are not required to provide employee's requested accommodation – "[t]he employers need only provide *some* reasonable accommodation") (emphasis in original); *Ruhling v. Tribune Co.*, 2007 U.S. Dist. LEXIS 116, at *50 (E.D.N.Y. Jan. 3, 2007) ("The fact that plaintiff may have preferred her own proposal does not render the defendants' proposal unreasonable"). Indeed, Plaintiff's preferred accommodation – that she be permitted to work part-time with less responsibility while other employees assumed her job duties – would have resulted in an undue hardship to LM. 42 U.S.C. § 12111(10)(A) (undue hardship includes "action requiring significant difficulty or expense"); *Craddock v. Little Flower Children & Family Servs. of N.Y.*, 2016 WL 755631, at *12 (E.D.N.Y. Feb. 25, 2016) (granting summary judgment on failure to accommodate claim where plaintiff's proposed accommodations would have created undue burden on employer and eliminated essential function of plaintiff's job). Defendants' provision of multiple reasonable accommodations ends this case.

Plaintiff's NYCHRL claim fails for the same reasons her ADA claim:

> Applying the above analysis and construing the NYCHRL liberally, the Court again finds that Defendants engaged in the required interactive process with Plaintiff and ultimately offered her a reasonable accommodation. This is because, no matter how generously the Court construes Plaintiff's claims, she has failed to prove the challenged conduct is caused at least in part by discriminatory or retaliatory motives. In sum, as there is no genuine dispute that Defendants afforded Plaintiff reasonable accommodations as contemplated by the ADA, the NYSHRL, and the NYCHRL, the Court finds for Defendants on these claims.

*Leon*, 2017 WL 6729676, at *6 (citations & alterations omitted). For each of these reasons, Plaintiff's failure to accommodate claims must be dismissed.

## D.  PLAINTIFF'S RETALIATION CLAIMS SHOULD BE DISMISSED

Plaintiff's retaliation claims under the ADA, ADEA, and NYCHRL are equally unavailing. To state a claim for retaliation under the ADA or ADEA, "'a plaintiff must plead facts that would tend to show that: (1) [s]he participated in a protected activity known to the defendant; (2) [s]he suffered an adverse employment action; and (3) there exists a causal connection between the protected activity and the adverse action.'" *Rozenfeld v. Dep't of Design & Const. of City of N.Y.*, 875 F. Supp. 2d 189, 207 (E.D.N.Y. July 12, 2012) (Kuntz, J.) (quoting *Birkholz v. City of N.Y.*, 2012 WL 580522, at *11 (E.D.N.Y. Feb. 22, 2012)), *aff'd*, 522 F. App'x 46 (2d Cir. 2013); *see also Leon*, 2017 WL 6729676, at *6 (noting that retaliation claims under the ADA and ADEA are governed by the same standard).

Assuming *arguendo* that Plaintiff can establish a *prima facie* case (which she cannot do), "the burden then shifts to [Defendants] to articulate a legitimate non-retaliatory reason for the challenged employment decision." *Suarez v. City of N.Y.*, 2012 U.S. Dist. LEXIS 144918, at *10 (S.D.N.Y. Sept. 26, 2012); *accord Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010). "[I]f the defendant articulates a legitimate non-retaliatory reason for the challenged employment decision, the presumption raised by the *prima facie* is rebutted and plaintiff must then point to evidence that would be sufficient for a rational fact finder to conclude that the employer's

explanation is merely a pretext for impermissible retaliation." *Suarez*, 2012 U.S. Dist. LEXIS 144918, at *10-11.

## 1.   Plaintiff Did Not Suffer Any Adverse Employment Action

The record is devoid of any evidence that Plaintiff suffered an adverse employment action (let alone one caused by her protected activity). To sustain her *prima facie* retaliation claim, Plaintiff must prove that she suffered a "materially adverse action." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006). To establish a "materially adverse action," "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. The record plainly demonstrates that Plaintiff suffered no such action.

Plaintiff acknowledges that LM never terminated her employment. Moreover, LM never demoted Plaintiff, or reduced her salary, benefits, or job duties. Instead, after Plaintiff returned to work when she was able to assume her full-time role, she returned to the same position – and a better schedule and an even higher salary – compared to before her leave. To the extent the duties of Plaintiff's position changed during her leave, such changes were the result of department-wide changes such as the Ironshore acquisition and REDACTED's departure – actions that had no personal relation to Plaintiff whatsoever.[7]

As to Plaintiff's retaliation claims against the individual defendants, the record shows that Rogin did not advise any LM employee that Plaintiff could not be accommodated by working part-time in a lesser capacity. Rogin made no determination as to whether Plaintiff could perform the

---

[7]      Plaintiff also cannot conjure any adverse action from HR's communications advising her that LM *could* terminate her employment if she failed to return to work. As the record makes plain, such communications were not "threats" of termination, given Plaintiff's simultaneous communications with Williams. Even assuming that such communications constituted threats of termination – and they plainly do not – the communications do not constitute an adverse action because, without more, a "threat" falls well short of the materially adverse change necessary to support a viable claim. *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

essential functions of her job when Plaintiff requested to return to work on a part-time basis with lesser responsibilities. Similarly, Amendola in HR played a limited role with respect to Plaintiff's request to assume a part-time role with lesser responsibilities, and she merely facilitated ER's dialogue with Plaintiff. In sum, Plaintiff cannot meet her burden to prove that she suffered from any materially adverse action that would have dissuaded a reasonable person in her shoes to not exercise any protected rights.

### 2.   Plaintiff Cannot Establish a Causal Connection Between Her Purported Protected Activity and Any Adverse Employment Action

Even if *arguendo* Plaintiff had met her burden of proving that she suffered an adverse employment action (which she has not done), she has not met her burden to prove a causal connection between any protected activity and a purported adverse employment action. Plaintiff first requested to work on a part-time schedule with less responsibility in or around March 2016, and she commenced this lawsuit in September 2016.[8] Yet, she did not return to work until July 2017, and she voluntarily resigned in February 2018. Plaintiff has not shown any evidence that she suffered any adverse action due to her accommodation request or filing of this lawsuit – let alone that these actions occurred within temporal proximity to her first request. *Craddock*, 2016 WL 755631, at *13 ("[W]hen more than three months have passed between a protected activity and an allegedly retaliatory response, the Second Circuit has deemed the evidence insufficient to raise an issue of fact concerning causation.") (citation omitted).

Moreover, Plaintiff has not even identified who retaliated against her or how she was retaliated against. This lack of any specificity is not surprising because, upon her return from leave, Falzone managed Plaintiff due to REDACTED's resignation and LM's restructuring due to the Ironshore acquisition. In fact, Plaintiff had no interaction whatsoever with Rogin or Hinchley upon

---

[8]    Defendants presume that Plaintiff's request for accommodations and filing of this lawsuit were protected activities for the purposes on this motion only,

her return from leave. As such, Plaintiff cannot sustain her burden of proving *prima facie* ADA or ADEA retaliation.

####    3.    <u>Plaintiff's NYCHRL Retaliation Claim Must Also Be Dismissed</u>

"'The [NYCHRL] is slightly more solicitous of retaliation claims than federal and state law because, rather than requiring a plaintiff to show an adverse employment action, it only requires him to show that something happened that was reasonably likely to deter a person from engaging in protected activity.'" *Rozenfeld*, 875 F. Supp. 2d at 208 (quoting *Birkholz,* 2012 WL 580522, at *15 (citing N.Y.C. Admin. Code § 8–107(7)). The Second Circuit has articulated, however, that "the NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by . . . retaliatory motives, or if the defendant proves the conduct was nothing more than 'petty slights or trivial inconveniences.'" *Id.* at 113 (quoting *Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 41 (1st Dep't 2009)). Plaintiff's NYCHRL retaliation claim fails as well.

Plaintiff's request for a reasonable accommodation cannot give rise to a retaliation claim under the NYCHRL because "a request for a reasonable accommodation is not a protected activity for purposes of a retaliation claim" under that statute. *Witchard v. Montefiore Med. Ctr.*, 103 A.D.3d 596, 596 (1st Dep't 2013). Even if Plaintiff could prove that she participated in any protected activity, her retaliation claims cannot survive dismissal for the same reason that her ADA and ADEA retaliation claims fail: she cannot prove that Defendants took any adverse employment action against her, and no reasonable jury could conclude that any of Defendants' challenged actions were motivated, even in part, by a retaliatory animus.

#### E.    **PLAINTIFF'S AIDING AND ABETTING CLAIMS SHOULD BE DISMISSED**

Plaintiff's aiding and abetting claims similarly fail as a matter of law. The NYCHRL allows for individual liability where an individual defendant was aiding and abetting the unlawful

discriminatory acts of others. *Forrest v. Jewish Guild for the Blind*, 309 A.D.2d 546, 559-60 (1st Dep't 2003) (individual defendants not liable in former employee's aiding and abetting claim when the underlying claim was dismissed). Such liability attaches only where (i) liability has first been established as to the employer or another person, and (ii) the individual defendant "actually participate[d] in the conduct giving rise to the discrimination." *Feingold v. N.Y.*, 366 F.3d 138, 157 (2d Cir. 2004). Plaintiff cannot meet her burden.

First, Plaintiff cannot establish any underlying liability as to LM – thus foreclosing any concomitant individual liability. Second, the evidentiary record makes plain that none of the individual defendants ever made any discriminatory comments or acts regarding Plaintiff's age or disability, or engaged in or condoned any other conduct reflecting their alleged discriminatory animus. The dismissal of Plaintiff's aiding and abetting claims – which cannot survive in the absence of evidence to support them – renders the collapse of Plaintiff's case complete.

## IV.   CONCLUSION

Based on the foregoing reasons, Defendants respectfully request that the Court grant summary judgment in favor of Defendants and dismiss all of Plaintiff's claims with prejudice, and award such other relief as the Court deems just and proper.

Dated:  New York, New York             Respectfully submitted,
        October 12, 2018

                                       OGLETREE, DEAKINS, NASH,
                                        SMOAK & STEWART, P.C.

                                       By  /s Aaron Warshaw
                                           Aaron Warshaw
                                           Sharon P. Margello
                                           Evan B. Citron
                                       1745 Broadway, 22nd Floor
                                       New York, New York 10019
                                       (212) 492-2500
                                       aaron.warshaw@ogletreedeakins.com

                                       *Attorneys for Defendants*

25