UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SEON CHOI, :
:
                Plaintiff, :
: No. 16-cv-5392 (WFK)(LB)
   -against- :
: Service Date: April 25, 2019
:
LIBERTY MUTUAL INSURANCE COMPANY, :
JESSICA ROGIN, LULU AMENDOLA, and :
JAMES HINCHLEY, :
:
                Defendants. :
:
-------------------------------------------------------------x

# DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO STRIKE

Dated:  New York, New York
         April 25, 2019

                            Aaron Warshaw
                            Sharon P. Margello
                OGLETREE, DEAKINS, NASH,
                SMOAK & STEWART, P.C.
         599 Lexington Avenue, 17th Floor
                New York, New York 10022
                         (212) 492-2500

                          *Attorneys for Defendants*

## **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ....................................................................................... 1

II. ARGUMENT ................................................................................................................... 2

    A. LM PROPERLY SEEKS TO EXCLUDE THE COMMUNICATION UNDER THE ATTORNEY-CLIENT PRIVILEGE BECAUSE IT WAS IN FURTHERANCE OF LEGAL ADVICE ........................................... 2

    B. THE APPLICABLE PRIVILEGES EXTENDED TO ASSURANCE, LM'S CORPORATE SUBSIDIARY ........................................... 5

    C. THE COMMUNICATION IS ALSO PROTECTED BY THE ATTORNEY WORK PRODUCT PRIVILEGE........................................... 6

    D. THE COMMUNICATION IS ALSO PROTECTED BY THE COMMON INTEREST PRIVILEGE............................................................ 7

    E. LM DID NOT WAIVE ITS PRIVILEGE ................................................................ 8

III. CONCLUSION................................................................................................................ 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Admiral Ins. Co. v. U.S. District Court*,
    881 F.2d 1486 (9th Cir. 1989) ................................................................................................6

*Boss Mfg. Co. v. Hugo Boss AG*,
    No. 97-CV-8495(SHS)(MHD), 1999 WL 47324 (S.D.N.Y. Feb. 1, 1999)..............................4

*Bowne of New York City, Inc. v. AmBase Corp.*,
    150 F.R.D. 465 (S.D.N.Y. 1993) ....................................................................................5, 6, 9

*Chin v. Rogoff & Co., P.C.*,
    No. 05 Civ. 8360(NRB), 2008 WL 2073934 (S.D.N.Y. May 8, 2008)....................................9

*In re Copper Mkt. Antitrust Litig.*,
    200 F.R.D. 213 (S.D.N.Y. 2001) .............................................................................................7

*In re FTC*,
    No. M18-304(RJW), 2001 WL 396522 (S.D.N.Y. Apr. 19, 2001) .........................................8

*In re Horowitz*,
    482 F.2d 72 (2d Cir.)................................................................................................................6

*Martin v. Valley Nat'l Bank*,
    140 F.R.D. 291 (S.D.N.Y. 1991) .............................................................................................7

*Murray v. Bd. of Educ. of City of N.Y.*,
    199 F.R.D. 154 (S.D.N.Y. 2001) .............................................................................................2

*In re Sims*,
    534 F.3d 117 (2d Cir. 2008).....................................................................................................9

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
    No. 97-CV-6124 (JGK)(THK), 2000 WL 744369 (S.D.N.Y. June 8, 2000) ..........................9

*United States v. Adlman*,
    134 F.3d 1194 (2d Cir. 1998)...................................................................................................7

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir.)............................................................................................................2

*United States v. Davis*,
    132 F.R.D. 12 (S.D.N.Y. 1990) ...............................................................................................4

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ............................................................................................. 2, 3

*Walsh v. Northrop Grumman Corp.*,
   165 F.R.D. 16 (E.D.N.Y. 1996) .................................................................................. 8

*Wilder v. World of Boxing LLC*,
   324 F.R.D. 57 (S.D.N.Y. 2018) .................................................................................. 7

*Zimmerman v. Poly Prep Country Day Sch.*,
   No 09-CV-4586(FB)(CLP), 2011 WL 1429221 (E.D.N.Y. Apr. 13, 2011) ............... 3

**Other Authorities**

 Fed. R. Evid. 502(b) ........................................................................................................ 9

## I.   PRELIMINARY STATEMENT

LM respectfully submits this reply in further support of its motion to strike Plaintiff's improper submission of a privileged document belonging to LM, and to compel Plaintiff to return and certify the destruction of all copies of the privileged document.[1]

As established in LM's Opening Brief, the attorney-client and work product privileges clearly extend to the email at issue – a communication with LM's corporate subsidiary Assurance from which LM's in-house counsel sought to further her legal advice. In response, Plaintiff speculates that the communication was in furtherance of business rather than legal advice. Yet, Plaintiff ignores the clear disclaimers and other language denoting that Mr. Williams sent the email to assist Attorney Starr in providing legal advice and to assess certain claims. (Warshaw Decl., Ex. A) ("Privileged and Confidential" disclaimers; "reaching out . . . at [Attorney Starr's] direction"). Plaintiff's argument that the document was not covered by the attorney-client or work product privileges is thus specious, at best. Indeed, Plaintiff knows full well that her counsel was engaged in pre-litigation settlement discussions with Attorney Starr, and the email was in furtherance of Attorney Starr's legal advice at that time.

Plaintiff also argues – *falsely* – that LM and Assurance lack a common interest. Notably, however, Plaintiff does not refute that, as a matter of law, the attorney-privilege and work product privileges extend between a parent and its subsidiary. (Opening Br. at 6-7) (collecting cases). Indeed, Plaintiff admits that LM is related to Assurance because she states (incorrectly) in her Local Rule 56.1 Statement that the email's recipient Ms. Boyle was employed by LM, not Assurance. (Pl. 56.1, ¶ 28.) Even assuming *arguendo* that LM strictly relies upon the common-

---

[1]  The capitalized terms used in this reply are defined in "Defendant Liberty Mutual Insurance Company's Memorandum of Law in Support of Motion to Strike" ("Defs. Mem."). "Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Strike" is cited herein as "Opp."

interest privilege – which it does not – Plaintiff has merely established that Assurance's role was to administer Plaintiff's LTD benefits, not that LM and Assurance had divergent interests.

Finally, Plaintiff's argument that LM waived its privilege is wholly without merit. Plaintiff contends that the document is relevant to her claims and to dispute LM's defenses. Yet, when her arguments are boiled down, Plaintiff fails to present any legal or factual grounds to refute that Mr. Williams was the decision-maker with respect to Plaintiff's request for accommodation, and that he reached out to Ms. Boyle at Assurance at Attorney's Starr behest so that she could provide legal advice. Such facts do not support a finding that LM waived its privilege over the email in question.[2] For these reasons, and those in the Opening Brief, the Court should grant LM's motion to strike.

## II.   ARGUMENT

### A.   LM PROPERLY SEEKS TO EXCLUDE THE COMMUNICATION UNDER THE ATTORNEY-CLIENT PRIVILEGE BECAUSE IT WAS IN FURTHERANCE OF LEGAL ADVICE

As established in LM's Opening Brief, the communication at issue is protected from disclosure under the attorney-client privilege because it was sent at Attorney Starr's behest to assist in providing legal advice and to assess certain claims. (Opening Br. at 3.) It is well-established, and as the authority cited with approval by Plaintiff states, that "[t]he purpose of the [attorney-client] privilege is 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Murray v. Bd. of Educ. of City of N.Y.*, 199 F.R.D. 154, 155 (S.D.N.Y. 2001) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)); *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.) ("The purposes for the [attorney-client] privilege are twofold: first, it assures that a person seeking legal advice may do so safely. Its existence therefore encourages the

---

[2]   Plaintiff abandons her pre-motion argument that LM waived its privilege after the document in question was inadvertently produced in discovery. Indeed, the record shows that LM took diligent steps to claw back the document as soon as it discovered that it had been produced by prior counsel. (Opening Br. at 4, 11.)

2

full and truthful revelation by the client of all the facts in his possession. Second, no attorney can represent a client effectively unless the client discloses fully all the facts in his possession."). Under these principles, LM has met its burden to show that the communication is protected from disclosure because it reflects Attorney Starr's collection of information to further her legal advice.

In response, Plaintiff argues without any factual support that the attorney-client privilege does not attach to the email because: (1) Mr. Williams was purportedly seeking factual information; and (2) the communication was purportedly intended to provide business advice, not legal advice. (Opp. at 6-10.) Neither argument has any basis in fact or in law.

Plaintiff's argument that "the facts are not privileged," (*id.* at 6-7), is entirely misplaced and misstates this principle. Cf. *Upjohn*, 449 U.S. at 396 ("The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.") (citation omitted); *Zimmerman v. Poly Prep Country Day Sch.*, No 09-CV-4586(FB)(CLP), 2011 WL 1429221, at *27 (E.D.N.Y. Apr. 13, 2011) ("It is the communication which is privileged, not the underlying facts communicated.") (citation and internal quotations omitted). Here, LM does not seek to exclude the underlying facts being sought by Attorney Starr – *i.e.*, whether Plaintiff's doctors had certified her to perform her job duties on a full-time basis. Indeed, this dispositive fact is already well-established, namely that Plaintiff's doctors repeatedly certified that she was unable to perform her full-time, managerial job duties. (Def. 56.1, ¶¶ 54-57, 64.) Rather, LM seeks to prevent Plaintiff from erroneously using the document to dispute that LM engaged in the interactive process or to manufacture a purported issue of fact regarding who made the decision regarding her accommodation request. (*See, e.g.*, Pl. 56.1, ¶ 66.) In other words, the communication is privileged because it reflects Attorney Starr's

3

gathering of information to assist in providing legal advice, and Plaintiff is incorrect that LM seeks to exclude any underlying facts or information relating to the communication.

Plaintiff next speculates that Attorney Starr provided business advice rather than legal advice for various convoluted reasons. She supports this assertion by arguing that LM did not provide a "sworn statement" from Attorney Starr,[3] and that Attorney Starr was also involved in communications with Plaintiff's counsel, during which she made offers of employment to Plaintiff that were rejected. (Opp. at 8-10.) Notably, however, Plaintiff ignores that the clear disclaimers and other language establish that Mr. Williams sent the email to assist Attorney Starr in providing legal advice and assess certain claims. (Warshaw Decl., Ex. A) ("Privileged and Confidential" disclaimers; "[Mr. Williams is] reaching out . . . at [Attorney Starr's] direction"). As such, the communication reflected legal advice not business advice.

Even then, it is well-established that in-house counsel can serve both a legal and business function without destroying the attorney-client privilege. *United States v. Davis*, 132 F.R.D. 12, 16 (S.D.N.Y. 1990) ("Although the solicitation or giving of business advice is not privileged, . . . [t]he mere fact that business advice is given or solicited does not, however, automatically render the privilege lost: where the advice given is predominantly legal, as opposed to business, in nature the privilege will still attach.") (citations omitted); *Boss Mfg. Co. v. Hugo Boss AG*, No. 97-CV-8495(SHS)(MHD), 1999 WL 47324, at *2 (S.D.N.Y. Feb. 1, 1999) ("Although the provision of predominantly non-legal services would not be covered by [attorney-client privilege], the fact that counsel engaged in negotiations that involved business as well as legal considerations does not vitiate the privilege."). The mere fact that Attorney Starr was also involved in communicating with Plaintiff's counsel to provide Plaintiff with other jobs, which is evidence of LM's – but not

---

[3] Plaintiff's argument is nonsensical because a sworn statement explaining Attorney Starr's legal advice would waive the attorney-client and work product privileges. In any event, as LM has already proffered and established – which is obvious from the face of the document at issue – Attorney Starr directed Mr. Williams to collect information from Ms. Boyle to provide legal advice and to assess certain claims in this case.

4

Plaintiff's – engagement in the interactive process, does not somehow render her unable to also provide legal advice.

Plaintiff's false claim that Attorney Starr "served an employee relations function" is also misplaced. (Opp. Br. at 9). To be clear, Attorney Starr provided legal advice to Mr. Williams, LM's Employee Relations Consultant, and the record shows that the two served in completely distinct functions at all times. (Def. 56.1, ¶ 41) (ER department was the decision-maker whether to grant Plaintiff's accommodations, and Mr. Williams handled Plaintiff's request). As such, Plaintiff has not refuted – and she cannot refute – that Attorney Starr was fully entitled to deputize Mr. Williams to gather information on her behalf so that she could provide legal advice. (Opening Br. at 8-9) (collecting cases).

**B.     THE APPLICABLE PRIVILEGES EXTENDED TO ASSURANCE, LM'S CORPORATE SUBSIDIARY**

It is well-established that the attorney-privilege and work product privileges extended from LM to its subsidiary, Assurance. (Opening Br. at 6-7.) For that reason, Plaintiff abandons her argument raised in her pre-motion submission that Ms. Boyle was employed by a "third party." Instead, Plaintiff now argues that: (1) "Assurance was not a *wholly* owned subsidiary of LM," (Opp. at 10) (emphasis in original); and (2) Assurance had its own counsel, and therefore LM and Attorney Starr purportedly cannot have an attorney-client relationship with Assurance, (*id*. at 11-12). Plaintiff again grasps at straws because neither argument has any basis in fact or law.

As an initial matter, Plaintiff blatantly misstates the applicable law. Plaintiff cites *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465 (S.D.N.Y. 1993), for the purported proposition that privilege only extends between a parent and its subsidiary "upon a showing that a common attorney was representing both corporate entities or that the two corporations shared a common legal interest and thus came within the joint-client rule." (Opp. at 10) (citing *Bowne*, 150 F.R.D. at 491). Yet, *Bowne* continues to explain that privilege *also* extends where "the disclosure

5

was made to an employee of the subsidiary for the principal or sole purpose of eliciting assistance to the attorney in rendering legal advice or other legal services." *Id*. (citing *Admiral Ins. Co. v. U.S. District Court*, 881 F.2d 1486, 1493 n.6 (9th Cir. 1989); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.)). This is the precise reason the privilege encompassed the communication between LM and Assurance, namely that Attorney Starr elicited information from LM's corporate subsidiary to render legal advice to the corporate parent LM.

Further, in arguing that LM did not "*wholly*" own Assurance, Plaintiff conveniently ignores that LM owned 90% of Assurance's stock, and the remaining 10% was owned by another LM subsidiary. (Opening Br. at 2 & n.1.) As such, LM directly or indirectly owned <u>*100%*</u> of Assurance at the time that the communication at issue was sent.

Also undercutting Plaintiff's arguments, she (incorrectly) states in her Local Rule 56.1 Statement that Ms. Boyle was employed by LM, not Assurance. (Pl. 56.1, ¶ 28.) Notably, Plaintiff has no evidentiary support for this assertion. Regardless of Plaintiff's confusion, Assurance's role was to administer Plaintiff's LTD benefits, but Plaintiff has not established that LM and Assurance had divergent interests (even assuming *arguendo* that is the standard, which it is not). Plaintiff also has not established that LM or Attorney Starr are somehow barred from establishing an attorney-client privilege merely because of Assurance's function at LTD administrator. Indeed, it is completely irrelevant that Assurance employed its own counsel to provide legal advice on corporate compliance issues that were unrelated to the legal counsel that Attorney Starr provided herein. (DiChiara Decl., Ex. 3.)

C. **THE COMMUNICATION IS ALSO PROTECTED BY THE ATTORNEY WORK PRODUCT PRIVILEGE**

In addition to the attorney-client privilege, the communication at issue is protected by the attorney work product privilege. (Opening Br. at 7-8.) Plaintiff does not dispute that Mr. Williams's July 2016 communication was sent at Attorney Starr's behest in anticipation of the

foregoing litigation: in April 2016, Plaintiff's counsel sent a settlement demand to LM and, once settlement discussions were unsuccessful, Plaintiff commenced this action in September 2016. (*Id.* at 9.) Faced with these facts, Plaintiff again attempts to argue that attorney work product does not protect "underlying facts," and she contends that the privilege is limited to "'documents prepared principally or exclusively to assist in anticipated or ongoing litigation.'" (Opp. at 14-15) (quoting *Martin v. Valley Nat'l Bank*, 140 F.R.D. 291, 304 (S.D.N.Y. 1991). Neither argument has merit.

For substantially the same reason as set forth above, the attorney work product doctrine protects the communication because LM seeks to exclude the communication itself rather than any underlying facts relating to whether Plaintiff's doctors certified her to perform her job duties on a full-time basis. *Infra* II.A. As such, attorney work product protects the communication at issue.

In addition, LM has firmly established that the communication was sent in anticipation of the foregoing litigation – a fact that Plaintiff hardly disputes – and thus the work product privilege applies. "It is firmly established . . . that a document that assists in a business decision is protected by work-product immunity if the document was created because of the prospect of litigation." *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001) (citing *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)). "Ultimately, 'in anticipation of litigation' means that 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Wilder v. World of Boxing LLC*, 324 F.R.D. 57, 62 (S.D.N.Y. 2018) (quoting *Adlman*, 134 F.3d at 1202) (other citation omitted). Under this standard, the attorney work product privilege also attaches because litigation was not only reasonably anticipated, but it actually occurred.

D.  **THE COMMUNICATION IS ALSO PROTECTED BY THE COMMON INTEREST PRIVILEGE**

In addition to the attorney-client and work product privileges, the communication was also protected by the common interest privilege. (Opening Br. at 8). Plaintiff bizarrely and inaccurately

7

responds that, "while LM was doing everything in its power to *prevent* Plaintiff from returning to work, Assurance – through Boyle – was trying to *help* Plaintiff return to work." (Opp. at 12) (emphasis in original). In truth, the only reason that Plaintiff was prevented from returning to work was because her doctors repeatedly certified that she was unable to perform her full-time, managerial job duties. (Def. 56.1, ¶¶ 54-57, 64.) Moreover, Plaintiff has not established that LM and Assurance actually had divergent interests because LM's relevant role was to determine what (if any) accommodation could be provided to Plaintiff, and Assurance's role was to administer her LTD benefits. These roles are not at cross purposes and the parties' interests were, in fact, aligned. Specifically, because LM was Assurance's corporate parent, both entities shared the common pecuniary interest in avoiding or limiting litigation.

Plaintiff also yet again argues that Attorney Starr provided business advice, not legal advice. (Opp. at 14) However, the cases cited by Plaintiff are readily distinguishable because they involved business transactions, not the gathering of information in anticipation of litigation. *In re FTC*, No. M18-304(RJW), 2001 WL 396522 (S.D.N.Y. Apr. 19, 2001) (communication not protected by common interest privilege because *inter alia* it related to non-party advertising agency's advice over pharmaceutical advertising campaign); *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996) (communication not protected by common interest privilege because *inter alia* it related to non-party financial advisor's advice over business merger). By stark contrast, Attorney Starr solicited information from Assurance to assist her in providing legal advice and evaluating certain claims, not to further a business enterprise.

E.   **LM DID NOT WAIVE ITS PRIVILEGE**

Once LM discovered that the document was inadvertently disclosed, it took diligent steps to claw back the document. (Opening Br. at 4, 11.) Notably, Plaintiff abandons her argument raised in her pre-motion submission that LM's claw-back was insufficient.

8

Instead, Plaintiff now argues that LM somehow waived its privilege because it purportedly "place[d] the privileged communication at issue by relying on it to support [its] defense." (Opp. at 15.) Plaintiff thus recites a series of supposed ways that LM placed the communication at issue, including that: Mr. Williams was the decision-maker regarding Plaintiff's accommodation request; Mr. Williams evaluated Plaintiff's request and determined that full-time management was an essential function of her position; LM (including through counsel) unconditionally offered to place Plaintiff in comparable positions in or around Los Angeles and New York – two cities Plaintiff had identified as her preferences – without having to apply, interview, or compete; and Plaintiff (not Defendants) was responsible for the purported delay in responding to her accommodation request.. (*Id.* at 16-17). Based on these facts, Plaintiff argues that the communication is "directly relevant" to address these issues. (*Id*. at 17.) However, Plaintiff has in no way met her burden to prove waiver by LM. In fact, Plaintiff conflates relevance with waiver.

Where, as here, a party inadvertently produces a privileged document, such production will only be deemed a waiver if the producing party was "completely reckless." (Opening Br. at 5) (quoting *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97-CV-6124 (JGK)(THK), 2000 WL 744369, at *4 (S.D.N.Y. June 8, 2000)): *see also* Fed. R. Evid. 502(b). As such, the decisions cited by Plaintiff are completely distinguishable because they involved intentional waiver or disclosure of privileged materials. *In re Sims*, 534 F.3d 117 (2d Cir. 2008) (plaintiff waived privilege over psychiatric records by placing emotional distress damages at issue); *Bowne*, 150 F.R.D. 465 (defendant expressly waived privilege in related lawsuits when general counsel was deposed); *Chin v. Rogoff & Co., P.C.*, No. 05 Civ. 8360(NRB), 2008 WL 2073934 (S.D.N.Y. May 8, 2008) (plaintiffs placed legal advice at issue by relying on advice-of-counsel claims and theory of damages). By stark contrast, the communication at issue here only reflects that Attorney Starr provided legal advice to LM, which is irrelevant to resolving Plaintiff's claims and patently

9

inadmissible. In the end, the Court need not entertain Plaintiff's wild theories that the privilege has been waived because Plaintiff merely deems the document to be relevant to resolving her claims. However, if every relevant communication – or even "directly relevant" communication – were deemed a waiver of privilege, then privilege would cease to exist.

### III.  CONCLUSION

Based on the foregoing reasons, as well as those raised in LM's Opening Brief, LM respectfully requests that the Court: (i) strike Plaintiff's submission of the privileged document from the record; (ii) require Plaintiff to return the document and any copies thereof; (iii) require Plaintiff to amend her previously served Opposition, Statement of Facts, and Declaration papers without any reference or arguments that rely or relate to the inadmissible document; and (iv) award such other relief as the Court deems just and proper.

Dated:  New York, New York
        April 25, 2019

Respectfully submitted,

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

By  /s Aaron Warshaw
   Aaron Warshaw
   Sharon P. Margello
599 Lexington Avenue, 17th Floor
New York, New York 10022
(212) 492-2500
aaron.warshaw@ogletreedeakins.com
sharon.margello@ogletreedeakins.com

*Attorneys for Defendants*

38274451.2

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 25, 2019, a true and correct copy of the foregoing Defendant Liberty Mutual Insurance Company's Reply Memorandum of Law in Further Support of Its Motion to Strike, was served by e-mail on the following counsel of record for Plaintiff:

>Michael R. DiChiara
>Krakower DiChiara LLC
>One Depot Square, Suite 2
>Park Ridge, NJ 07656
>md@kdlawllc.com

                                                  s/ Aaron S. Warshaw